IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jenny Lyons, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 16 CV 50300 |
| vs. | ) |
| | ) Judge Philip G. Reinhard |
| Stephenson County, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

For the reasons stated below, plaintiff's motion for summary judgment [40] is denied and defendant's motion for summary judgment [37] is granted. The case is terminated.

## STATEMENT-OPINION

This case arises out of plaintiff Jenny Lyons' (hereinafter "plaintiff") two-count amended complaint against defendants Stephenson County, Stephenson County Sheriff's Office, David Snyders, and Dean Schroeder. *See* [31]. Count I alleges that defendants interfered with plaintiff's rights under 29 U.S.C. § 2612(a)(1)(C) (Family and Medical Leave Act ("FMLA")) by incorrectly informing her that she and her husband, Carl Lyons (hereinafter "Lyons"), were only entitled to a combined 12 weeks of FMLA leave from their employment with the Stephenson County Sheriff's Office. Count II alleges plaintiff was unlawfully terminated from her employment due to the exercise of her rights under the FMLA to take 12 weeks of leave in order to care for her son who was suffering from a serious health condition, pursuant to 29 U.S.C. § 2615(a)(2).

On October 16, 2017, defendants filed a motion for summary judgment [37], as well as a memorandum in support [39], and Local Rule 56.1 statement of facts [38]. Also on October 16, 2017, plaintiff filed a motion for summary judgment [40], memorandum in support [41], statement of facts [42], and appendix of evidence in support of her motion for summary judgment [42-1].

On November 22, 2017, plaintiff filed her response to defendant's motion [45], (amended) response to defendants' statement of facts, Local Rule 56.1(b)(3)(C) statement of additional facts [49], and a supplemental appendix of evidence [46]. Defendants also filed their response to plaintiff's motion [51], response to plaintiff's' statement of facts [48], and statement of additional facts [50]. On November 28, 2017, plaintiff filed a redacted supplemental appendix of documents [53].

1

On December 8, 2017, defendants filed their response to plaintiff's statement of additional facts [54]. On December 18, 2017, plaintiff filed her response to defendants' statement of additional facts [55]. The parties' cross motions for summary judgment are now ripe for the court's review.

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

Prior to addressing the merits of the parties's motions, it is necessary to set forth the undisputed facts located in the parties' Local Rule 56.1 statements of fact with respect to each motion. In addition, the court is cognizant of its obligation to construe all disputed and undisputed facts in the light most favorable to each non-moving party with respect to the motion directed against it. *See Schepers*, 691 F.3d at 913.

## A. FACTUAL BACKGROUND

1. Defendant's Motion for Summary Judgment.

As an initial matter, Local Rule 56.1(b)(3)(B) provides that the opposing party is required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." In plaintiff's response to defendants' statement of undisputed material facts [49], several of plaintiff's "disputes" contain citations to the record that are inaccurate or fail to actually dispute defendants' facts. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citations omitted). Because plaintiff has failed to properly dispute defendants' statements of fact in paragraphs 6, 8, 18, 26, 28, 29, 41, 43, 44, 47, 48, 49, 57, 58, 60, and 61, the court deems these facts admitted for the purpose of defendants' motion.

Plaintiff Jenny Lyons was employed as a correctional officer with the Stephenson County Sheriff's Office in Stephenson County, Illinois, from 2003 until her resignation on October 2, 2014. [38] at ¶ 1. At all relevant times, defendant David Snyders served as the Sheriff of Stephenson County and defendant Dean Schroeder served as the Jail Administrator for the

2

Stephenson County Sheriff's Office. [38] at ¶ 2. Plaintiff's husband, Carl Lyons, has been employed as a correctional officer with the Stephenson County Sheriff's Office since 2000. [38] at ¶ 3. Plaintiff worked under the direction of defendant Schroeder during her employment. [38] at ¶ 4. In 2012, plaintiff was on FMLA leave following the birth of her first child for approximately 12 weeks. [38] at ¶ 5. At the time of the birth of plaintiff's first child, the Stephenson County Sheriff's Office did not have a formal FMLA policy. [38] at ¶ 6. Also at the time of the birth of the Lyons' first child, Lyons was permitted to take two weeks of FMLA leave in addition to plaintiff's 12 weeks of FMLA leave because defendant Schroeder did not know about the provision in the FMLA that spouses working for the same employer can be limited to a combined 12 weeks of leave for the birth of their child. *Id*.

On July 27, 2012, the Stephenson County Sheriff's Office implemented General Order APM 412.00 - Family Medical Leave Act and Military Leave, FMLA. Plaintiff received a copy of this order on August 9, 2012. [38] at ¶ 8. Plaintiff kept a copy of the policy in a binder that she kept in her locker at the jail and was responsible for familiarizing herself with the policy. *Id*. Defendant Snyders delegated the handling of FMLA leave for the jail to defendant Schroeder. [38] at ¶ 9. Defendant Snyders had no involvement with employees' FMLA leave. *Id*. According to the Stephenson County Sheriff's Office FMLA policy, "[S]pouses employed by the same employer may be limited to a combined total of 12 workweeks of family leave for the following reasons: (a) birth and care of a child; (b) the placement of a child for adoption or foster care, and to care for the newly placed child; and © care for an employee's parent who has a serious health condition." [38] at ¶ 10. The Sheriff's Office FMLA policy also contains a section entitled "Procedure for Requesting FMLA leave" which states in relevant part:

> "An employee must provide the Stephenson County Sheriff's Office with at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable. If 30 days notice is not possible such as because of lack of knowledge of approximately when leave will be required to start, a change in circumstances or a medical emergency then notice must be given as soon as practicable. Employees must provide sufficient information for the Stephenson County Sheriff's Office to determine if the leave qualifies for FMLA protection and the anticipated timing and duration of the leave. Sufficient information may include that the employee is unable to perform job functions, the family member is unable to perform daily activities, the need for hospitalization or continuing treatment by a health care provider...
>
> Employees will also be required to provide certification as specified below and may be required to provide periodic recertification supporting the need for leave. Any employee taking leave to care for the employee's covered family member with a serious health condition or due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position much be supported by a certification issued by the health care provider of the employee or the employee's family member on the form attached to this policy...Additional copies of the certification forms can be obtained from your

3

supervisor...In the case of unforeseen leave, certification must be provide within 5 business days after the leave commences. FMLA leave may be denied in accordance with FMLA rules and regulations if appropriate certification is not provided." [38] at ¶ 11.

On February 28, 2014, plaintiff gave defendant Schroeder a note from her physician stating that she needed to be placed on light duty under the end of her (second) pregnancy. [38] at ¶ 12. On plaintiff's request, defendant Schroeder provided her with FMLA paperwork [38] at ¶ 13, and on May 30, 2014, plaintiff returned to defendant Schroeder the Certification of Health Care Provider for Employee's Serious Health Condition form that had been completed by her physician. [38] at ¶ 14. After turning in this form, plaintiff's FMLA leave was approved by defendant Schroeder and she understood that the Sheriff's Office had approved her request for 12 weeks of FMLA for the birth of her child. [38] at ¶ 15.

Plaintiff gave birth to her second child on July 26, 2014. Her estimated due date was October 2014. [38] at ¶ 17. Defendant Schroeder was present at the jail when Lyons was told that plaintiff was in labor. [38] at ¶ 18. Defendant Schroeder did not understand that there was any type of emergency situation in relation to the birth of plaintiff's second child. *Id*. Lyons left work early on July 25, 2014, when plaintiff was in labor, and took off 86 hours of work, from July 25, 2014 through August 8, 2014. [38] at ¶ 19. Lyons called the Sheriff's Office, said his child had been born and he "was taking time off due to the birth of [his] child." [38] at ¶ 20. Lyons supervisor completed a Benefit Time Request form for Lyons indicated that his leave was FMLA leave due to the birth of his child. Lyons may have seen this paperwork. [38] at ¶ 21. On August 1, 2014, Lyons prepared a memo with the subject of "Sick Time" stating that he would be off work August 2, 3, 4, 7, and 8 and would be back at work August 9, 2014. [38] at ¶ 22. Lyons took off 86 hours of work following the birth of his child in 2014, the equivalent of two weeks and two hours. [38] at ¶ 23. Lyons does not recall speaking with defendant Schroeder about the birth of his second child. [38] at ¶ 24. Defendant Schroeder testified at his deposition that Lyons' time off work would have been designated FMLA time because Lyons took more than three days off. [38] at ¶ 25. Defendant Schroeder considered Lyons' time off as FMLA leave covered under plaintiff's FMLA leave because plaintiff and Lyons were married. [38] at ¶ 26.

After Lyons returned to work, he met with defendant Schroeder and assistant jail director Stovall who told him that his two weeks of FMLA leave resulted in plaintiff now receiving two weeks less of her approved 12 weeks of FMLA leave. [38] at ¶ 27. Lyons does not recall what he said in response but requested that they put this information in writing to plaintiff. *Id*. Defendant Schroeder testified that during this conversation with Lyons about Lyons' FMLA leave, Lyons did not tell him about his child's medical condition. [38] at ¶ 28. After this meeting, Lyons looked at the Sheriff's Office FMLA policy but never asked plaintiff's doctor or his child's doctor to complete any forms to provide to the Sheriff's Office. [38] at ¶ 29.

On approximately September 25, 2014, plaintiff received a letter in the mail from defendant Schroeder notifying her that spouses working for the same employer have a combined

4

12 weeks of available FMLA leave. [38] at ¶ 30. The letter further stated that since Lyons had taken two weeks of FMLA leave following the birth of their child, that reduced plaintiff's entitlement by two weeks, thus plaintiff's FMLA leave would end on October 3, 2014,[1] and she would be required to return to work on October 7, 2014. *Id*.

On September 28, 2014, plaintiff sent a copy of her resume along with a completed application for employment to Nicor Gas indicating she was available to start work on October 1, 2014. [38] at ¶ 31. On September 29, 2014, she sent a note to defendant Schroeder advising that she wanted to talk to him about her time to come back and asked him to call her. [38] at ¶ 32. On the same day, plaintiff met with defendant Schroeder and assistant director Stovall. [38] at ¶ 33. Plaintiff told defendant Schroeder and Stovall that she "had recently went to the doctor that day with [her newborn child], and [the child] was put on medication, and [she] needed more time off of work. More time off of [] work meaning the extra two weeks that [she] thought that [she] had already gotten." *Id*. Plaintiff did not tell defendant Schroeder what kind of medication her child was taking or how long her child would be taking the medication. [38] at ¶ 34. Plaintiff testified at her deposition that defendant Schroeder asked her if she would consider being a stay-at-home mom and said he would need to talk to the Sheriff about the extra time off. [38] at ¶ 35. Plaintiff also testified that defendant Schroeder called her back the same day and told her that the Sheriff said she could either come back to work on the other night shift or she could resign. [38] at ¶ 36. Plaintiff told defendant Schroeder that it would be inconvenient to work a shift where she and Lyons would have different days off. [38] at ¶ 39. Plaintiff then agreed to return to work on October 7, 2014. [38] at ¶ 40.

Under the Sheriff's Office FMLA policy, the employee is obligated to notify the Sheriff's Office of the need for FMLA due to a family member's serious medical condition and it is not the obligation of the Sheriff's Office to make that request. [38] at ¶ 41. Plaintiff never asked her doctor for any paperwork to give to defendant Schroeder asking for additional time off work. [38] at ¶ 42. Plaintiff did not ask her child's pediatrician to fill out any paperwork that plaintiff could give to the Sheriff's Office. [38] at ¶ 43. Plaintiff only gave the Sheriff's Office one Certification of Health Provider form on May 30, 2014. [38] at ¶ 44.

On September 30, 2014, plaintiff was offered and accepted a job from Nicor Gas as a meter reader and started working at Nicor (daytime hours) on October 13, 2014. [38] at ¶ 45. On October 2, 2014, plaintiff gave defendant Schroeder a resignation letter and told him she had decided to resign her job as a correctional officer. [38] at ¶ 46. The resignation letter stated: "Dear Sheriff Snyders, Effective immediately I resign from my position as a correctional officer. Thank you for giving me the opportunity to work for the Stephenson County Sheriff's Department." *Id*. Plaintiff testified the reason why she resigned her job as a correctional officer was because she had accepted a job with Nicor Gas on September 30, 2014. [38] at ¶ 47. At no time prior to her resignation did plaintiff or Lyons notify defendant Schroeder that there was a

---

[1] Defendants' Rule 56.1 statement of fact, paragraph 30, states plaintiff's FMLA entitlement ended on "October 3, 2017." The court believes this to be a typographical error and accepts this fact as "October 3, 2014."

5

medical emergency or change in circumstance surrounding their need for FMLA leave. [38] at ¶ 48. At no time prior to her resignation did plaintiff or Lyons provide defendant Schroeder with a new certification issued by a health care provider either identifying plaintiff or her child as having a serious health condition. [38] at ¶ 49.

On October 22, 2014, plaintiff resigned her job with Nicor Gas after deciding it was not the job for her. [38] at ¶ 50. Shortly after plaintiff resigned from the Sheriff's Office, her position was filled by someone on the Sheriff's Office hiring list. [38] at ¶ 51. On October 27, 2014, plaintiff wrote a letter to defendant Snyders, stating: "Dear Sheriff Snyders, I would like to apologize for the inconvenience I have caused. I have given it considerable thought and I would like to continue working for the Stephenson County Sheriff's department as a correctional officer. I would like to retract the resignation I submitted on October 2, 2014. I appreciate your kindness and consideration during this time and await your reply." [38] at ¶ 52. On or about October 28, 2014, plaintiff received a letter from defendant Snyders advising the Sheriff's Office would not be extending an employment offer to plaintiff because "[a]t the present time we are fully staffed. You resigned without notice which means you left under bad terms. Your attendance record while employed showed an unacceptable usage of sick time." [38] at ¶ 53. After receiving this letter from defendant Snyders, plaintiff did not have any further communication with anyone at the Sheriff's Office about getting her job back. [38] at ¶ 54. Defendant Snyders testified at his deposition that he believed plaintiff did not exhibit professionalism or courtesy by handing in a letter of resignation without a two-week notice and he also believed that plaintiff's attendance record throughout her employment showed an unacceptable use of sick time. [38] at ¶ 55. Defendant Snyders does not hire back any person who has quit or resigned because he has been "burned too many times by them quitting again, and I just made a decision I'm not doing this anymore." [38] at ¶ 56.

At the time of her second pregnancy in 2014, plaintiff did not have any personal conversations with defendant Snyders concerning a need for leave or a need for any additional leave. [38] at ¶ 57. Defendant Snyders was aware that plaintiff had a child in 2014, but did not know when she was originally due, when she gave birth, or the circumstances surrounding the birth of the child, and did not find out that plaintiff's child was born prematurely until this lawsuit was filed. [38] at ¶ 58. Defendant Schroeder did not know that plaintiff's second child was born prematurely in 2014. [38] at ¶ 60. Defendant Schroeder was not aware that plaintiff's second child was in the neonatal intensive care unit until plaintiff's attorney made this allegation at defendant Schroeder's deposition on August 18, 2017. [38] at ¶ 61. The defendants were never notified that plaintiff's child had a serious medical condition. [38] at ¶ 62.

2. Plaintiff's Motion for Summary Judgment.

The disputed and undisputed facts set forth with regard to plaintiff's motion for summary judgment are substantially similar to those set forth in defendant's motion. The court notes a few material facts included in plaintiff's Rule 56.1 statement in support of her motion for summary judgment:

6

No one at the Sheriff's Office asked for paperwork from plaintiff's doctor or from her child's doctor or asked either plaintiff or Lyons to fill out any additional FMLA paperwork, in connection with plaintiff's or Lyons' leave following the birth of their child in 2014. [42] at ¶ 30. Defendant Schroeder testified he received a document from plaintiff prior to her child's birth that indicated that her estimated due date was October 4, 2014. [42] at ¶ 33. Defendant Schroeder never gave Lyons an FMLA packet, never communicated with Lyons regarding the documents he needed for FMLA, and is not aware of any FMLA documents for Lyons for July 2014. [42] at ¶ 35. Defendant Snyders admitted that being in the neonatal intensive care unit is a serious medical condition for purposes of FMLA and that a premature birth is a serious medical condition for purposes of FMLA. [42] at ¶ 44. Defendant Schroeder testified that if an employee came to him and informed him that they had a child born prematurely and was in the neonatal intensive care unit, they should receive FMLA paperwork. [42] at ¶ 45.

**B. ANALYSIS**

Both parties argue they are entitled to summary judgment on all counts. The court notes that both plaintiff and defendants have argued the same issues in their motions as in their responses to the opposing motions. Therefore, the court will address the parties' arguments together.

    1.    Count I - FMLA interference.

        a.    Interference based on combined 12 workweeks of FMLA leave.

Plaintiff claims defendants interfered with her rights under FMLA by incorrectly informing her that she and her husband were only entitled to 12 combined weeks of leave, and by not returning her to her position as a correctional officer with the Stephenson County Sheriff's Office in violation of FMLA.

Section 2615(a)(1) of FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under FMLA. In order to prevail in an interference claim, an employee must establish that (1) she was eligible for FMLA protections; (2) her employer was covered by FMLA; (3) she was entitled to take leave under FMLA; (4) she provided sufficient notice of her intent to take FMLA leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018). There is no dispute that plaintiff was eligible for FMLA protections pursuant to her employment as a correctional officer with the Stephenson County Sheriff's Office, that Stephenson County is covered by FMLA, and that plaintiff was entitled to take leave under FMLA following the birth of her second child in 2014. The dispute lies in whether there was sufficient notice of her FMLA leave (4), and whether Stephenson County denied her FMLA benefits to which she was entitled (5). To prevail on an FMLA interference claim, plaintiff bears the burden of proof. *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014).

7

Under FMLA, eligible employees are "entitled to a total of 12 workweeks of leave during any 12-month period...[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A). In cases where a husband and wife are employed by the same employer, "the aggregate number of workweeks of leave to which both may be entitled may be limited to 12 workweeks during any 12-month period, if such leave is taken," among other reasons, upon the birth of a child and in order to care for the child. 29 U.S.C. § 2612(f)(1)(A). As noted above, the Stephenson County Sheriff's Office adopted this policy in 2012.

Plaintiff's argument that the "same employer" provision of FMLA does not apply to her is two-fold. First, plaintiff argues that the two weeks leave taken by Lyons after the birth of their child was not considered by defendants to be FMLA which would off-set plaintiff's 12 weeks FMLA leave. Second, she argues that even if defendants considered Lyons' time off to be FMLA leave, Lyons' leave was to care for a sick child which, in turn, would provide both plaintiff and Lyons 12 workweeks of leave each under the County's FMLA policy. The court will take each argument separately.

It is undisputed that in May of 2014, defendant Schroeder approved plaintiff for 12 weeks FMLA leave, to follow the birth of her second child. Plaintiff's argument that Lyons' leave was not considered by defendants to be FMLA is undeveloped and appears to rest exclusively on the fact that at no time did Lyons prepare or turn in any FMLA paperwork, nor was he given any FMLA paperwork from any defendant in relation to the birth of his second child. According to the record, on July 25, 2014, Lyons was notified while at work that plaintiff was at the emergency room and having a baby. Lyons then took a total of 86 hours off work (from July 25, 2014 through August 8, 2014). Lyons' supervisor completed a benefit request form for Lyons indicating the 86 hours of leave as "FMLA." Lyons testified at his deposition that he "may have" seen this paperwork. Additionally, defendant Schroeder testified that Lyons' time off would have been designated as FMLA leave regardless since he took more than three days' off. Moreover, plaintiff does not dispute that when Lyons returned to work following the birth of their second child, Lyons met with defendant Schroeder who advised him that his two weeks of FMLA leave resulted in plaintiff receiving two less weeks of her approved 12 weeks of FMLA leave. While plaintiff disputes that the benefit request form was sufficient paperwork to indicate Lyons' time off as FMLA leave, it cannot be disputed that defendants considered Lyons' time to be FMLA leave. Because defendants considered Lyons' 86 hours of leave following the birth of his and plaintiff's child to be FMLA leave, defendants applied their FMLA policy regarding leave of spouses and considered Lyons' time off to be covered under plaintiff's FMLA leave.

It is undisputed that both plaintiff and Lyons received a copy of the Stephenson County Sheriff's Office FMLA policy in July of 2012. Both plaintiff and Lyons put a copy of the policy in their respective binders which they kept in their lockers at the Sheriff's Office. Further, despite plaintiff's dispute in her response to defendants' statement of material facts, plaintiff testified at her deposition that she received a copy of this policy, she was "responsible for familiarizing [herself] with [it]," and she, in fact, read it. The court finds that plaintiff (and Lyons) knew that defendants considered Lyons' two week leave to be leave pursuant to FMLA,

8

and that plaintiff was aware of the Sheriff's Office policy that spouses were allotted a combined 12 workweeks of FMLA leave following the birth of a child.

Next, plaintiff argues that even if defendants considered Lyons' time off to be FMLA leave, his leave was to care for a sick child (the child having been born prematurely and in the neonatal intensive care unit following its birth). Therefore, Lyons' leave should not run concurrently with plaintiff's, as allowed for in 29 U.S.C. § 2612(f)(1) which excepts out 29 U.S.C. § 2612(a)(1)© - the care of a son or daughter of the employee, if such son or daughter has a serious health condition. Defendants do not dispute that both plaintiff and Lyons would have been entitled to a full 12 workweeks of leave each to care for a child with a serious health condition - consistent with FMLA as adopted by the Sheriff's Office. However, this FMLA leave requires the employee to provide proper notice to the employer that the purpose of the leave is to care for a sick child. Pursuant to 29 C.F.R. § 825.303(a), "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." Also, "[a]n employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include...whether[] the employee's family member is under the continuing care of a health care provider." 29 C.F.R. § 825.303(b). Here, defendants' argue that the evidence shows neither plaintiff nor Lyons notified the defendants that their child had a serious medical condition which would make them eligible for 12 weeks of FMLA leave each and not subject them to the "same employer" limitation of sharing their 12 weeks' leave. Plaintiff's position is that defendants knew that Lyons was taking FMLA leave to care for his child who was suffering from a serious health condition.[2] Plaintiff further argues that if defendants were unsure about the purpose of Lyons' FMLA leave, they were obligated to make a further inquiry.[3]

---

[2] In her motion for summary judgment as well as her response to defendants' motion for summary judgment, plaintiff states that defendants "knew or should have known" that plaintiff gave birth to her child prematurely, and that "[c]ommon sense" would dictate that a child born prematurely would likely have medical problems.

[3] In support of her position, plaintiff argues courts have "routinely granted" summary judgment for employees where the employer failed to properly acknowledge the employee's FMLA rights, failed to make proper inquiry into the employee's health condition, or failed to notice employees of their FMLA rights. Plaintiff cites to four cases: (1) an improperly cited Eastern Division of Pennsylvania case not factually on-point which cites to an outdated C.F.R. regarding FMLA notice (*Dintino v. Doubletree Hotels Corp.*, CIV.A. 96-7772, 1997 WL 717208 (E.D. Pa. Nov. 14, 1997)); (2) a 1999 Northern District of Illinois case with multiple outdated regulations, including 29 C.F.R. § 825.700(a) which (in 1999) included the sentence: "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." (This clause was found unconstitutional in *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002)) (*Chan v. Loyola University Med. Center*, 97 C 3170, 1999 WL 1080372 (N.D. Ill. Nov. 23, 1999)); (3) a 1998 4th Circuit case (pre-*Ragsdale*) which also relied on 29 C.F.R. § 825.700(a) (*Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294 (4th Cir. 1998)); and (4) a 6th Circuit case not factually on-point (*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005) (employer failed to respond to

Regarding the issue of notice, when defendant Schroeder was asked at his deposition if Lyons told him about plaintiff's and Lyons' child's medical condition (during a meeting at the jail with Lyons upon his return from his FMLA leave), defendant Schroeder responded, "No." Plaintiff disputes this statement of fact. In support of this dispute, plaintiff relies on Lyons' deposition testimony wherein he stated he did not remember what he said to defendant Schroeder after defendant Schroeder told him his two weeks of FMLA leave would reduces plaintiff's 12 weeks of leave to 10 weeks. [49] at ¶ 28. As noted above, the court finds this "dispute" insufficient to meet plaintiff's burden to present evidence sufficient to establish that defendants knew of the child's serious health condition. *See Celotex Corp.* 477 U.S. at 322. Further, it is undisputed that neither plaintiff nor Lyons provided defendants with any physician certification or other paperwork from plaintiff's doctor or the child's doctor advising of the child's serious health condition and/or the need for plaintiff (or Lyons) to take additional FMLA leave. ("When the employer has enough information to determine whether the leave is being taken for a FMLA-qualifying reason (e.g., after receiving a certification), the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave..." 29 C.F.R. § 825.300(d).)

However, shortly after receiving written notification from defendants that her FMLA entitlement was reduced by two weeks due to Lyons' leave, plaintiff called defendant Schroeder and advised him that her child had recently been "put on medication" and she needed the "two extra weeks" off work. To the extent that this fact is to be considered "notice" to defendants of the child's serious health condition (which, incidentally, is not developed by plaintiff as an argument), it is insufficient. An employee's "notice must succeed in alerting the employer to the seriousness of the health condition." *Stevenson v. Hyre Electric Co.*, 505 F.3d 720, 725 (7th Cir. 2007). *See also de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 687 (7th Cir. 2008) ("The FMLA does not require employers to play Sherlock Holmes scanning...for clues as to the undisclosed, true reason for an employee's absence."). The court agrees with defendants that plaintiff's statement that her child had been "put on medication" does not adequately alert defendants to the seriousness of the child's condition such that they would be obligated to inquire. "The requirement of notice is not satisfied by the employee's merely demanding leave. He must give the employer a reason to believe he is entitled to it. If you have brain cancer but just tell your employer that you have a headache, you have not given the notice that the Act requires." *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 952 (7th Cir. 2004) (citations omitted). Additionally, notice aside, plaintiff has failed to provide adequate evidence that the child being "put on medication" qualified, in and of itself, as a serious health condition. ("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).) Because the court finds that defendants were not on notice of plaintiff's child's serious health issue (if any existed), they were not in a position to make a further inquiry as to the need for FMLA leave.

---

employee's need to take maternity leave and eventually offered her 6 weeks)). The court is unpersuaded by any of these cited cases.

10

    b.  Interference based on defendants' decision to not re-hire plaintiff.

  Next, plaintiff argues defendants violated her rights under FMLA by not returning her to her position as a correctional officer with the Stephenson County Sheriff's Office following her resignation. In support of her argument, plaintiff states after she was told by defendants that Lyons' two weeks of leave would be counted against her 12 weeks of leave (allotting her with only 10 weeks), and that she needed to either return to work (on her original shift or opposite shift) or resign, she had no choice but to resign her position as a correctional officer. Defendants counter this argument is not supported by any facts in the record.

  As noted above, plaintiff applied for a job with Nicor Gas on September 28, 2014, and indicated she would be available to start work on October 1, 2014. The next day, September 29, plaintiff met with defendant Schroeder who advised her she needed to return to work, pursuant to the Sheriff's Office FMLA spousal leave policy, October 7, which she accepted. However, on September 30, plaintiff accepted a position with Nicor with a start date of October 13. Two days later, plaintiff formally resigned her position as a correctional officer for Stephenson County by providing defendants with a written resignation letter. Plaintiff testified she resigned from the Stephenson County Sheriff's Office because she accepted a new job with Nicor Gas. However, plaintiff decided the job with Nicor Gas did not suit her, so she resigned from that employment on October 22. On October 27, plaintiff sent defendant Snyders a letter retracting her resignation with the Sheriff's Office and asked to be reinstated as a correctional officer. Plaintiff received correspondence on October 28 that defendant Snyders would not be re-hiring her because the jail was then fully staffed, she had left on bad terms (by not providing adequate notice of her resignation), and because her employment history showed unacceptable use of sick time. Defendant Snyders also testified it was his policy to not re-hire employees who previously resigned. The court agrees with defendants that the record is devoid of any evidence to suggest that plaintiff felt she was forced to resign her position as a correctional officer due to defendants' interference with her rights under FMLA. Additionally, plaintiff provides no case law or substantive argument in her briefs to persuade the court to find otherwise. Moreover, plaintiff's blanket statement in her briefs that "defendants created pretextual and blatantly false reasons why [plaintiff] should not be allowed to return" to her employment, is equally unsupported in law and fact.

  Plaintiff failed to provide defendants with proper notice of her child's serious health condition such that she and her spouse would have been eligible for 12 workweeks of leave each under FMLA. Additionally, there is no evidence to support plaintiff's argument that she was forced to resign from her position with the Stephenson County Sheriff's Office. Therefore, the court finds plaintiff has failed to meet her burden that defendants interfered with her rights under FMLA.

    2.  Count II - FMLA discrimination.

  In Count II of her amended complaint, plaintiff alleges defendants discriminated against her by terminating her employment with the Stephenson County Sheriff's Office due to the

exercise of her rights under 29 U.S.C. § 2612(a)(1)© - requesting 12 workweeks of leave to care for her premature infant child. Section § 2615(b)(2) makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual because such individual has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided" under FMLA. Both parties cite to *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), for guidance in analyzing a FMLA discrimination or retaliation claim. Under *Ortiz*, in order to make out a prima facie showing of discrimination or retaliation, an employee must show that the evidence would permit a reasonable fact finder to conclude that the plaintiff's FMLA status caused the adverse employment action at issue. *Id.* at 765-66. *See also Guzman*, 884 F.3d at 640.

In her briefs, plaintiff states she engaged in statutorily protected activity by taking FMLA leave. Defendants counter by stating that plaintiff never requested FMLA leave to care for her child's serious health condition and, therefore, her FMLA status did not cause any employer discrimination or retaliation. As noted above, the court agrees with defendant that plaintiff only requested FMLA leave for the birth of her child - not to care for her child with a serious health condition. Nevertheless, as there is no dispute that plaintiff took leave under FMLA and that she disputes the defendants' handling of her leave, the court will accept plaintiff's position that her FMLA "status" meets the requirements of *Ortiz*.

Next, plaintiff argues she suffered a materially adverse employment action when she was forced to either return to work from her FMLA leave two weeks early or resign. In support of her position, plaintiff relies on *Williams v. Illinois Dept. of Corrections*, 05 CV 4227-JPG, 2007 WL 772933 (S.D. Ill. March 9, 2007). In that case, plaintiff advised his employer that his mother was very ill and needed constant care. He requested a leave from work to be with her and take care of her. Williams' employer told him he did not have sufficient leave time accrued, therefore, his only option would be to resign. *Id.* at *2. The Southern District denied the employer's motion for summary judgment finding that Williams' was terminated by his employer and that the discharge could be considered retaliatory under FMLA. *Id.* at *7-8. The court agrees with defendant that the facts in *Williams* are inapposite to the case at bar. The "notice" of the employee's need for FMLA leave based on a serious health condition of a family member in *Williams* was clear - Williams told his employer of his mother's specific illness and her need of constant care. In response, Williams' employer offered no FMLA leave options, only termination. As discussed in detail above, here, plaintiff requested and was granted FMLA leave for the birth of her child yet failed to provide the defendants with proper notice of the need for FMLA-qualifying leave to care for a family member with a serious health condition. As *Williams* is not factually on-point, the court is unpersuaded by its findings.

Plaintiff next argues there is a causal connection between her taking FMLA leave and being forced to return to work two weeks earlier than her approved FMLA leave. Her argument is based on her belief that she was entitled to the full 12 workweeks of leave under FMLA. Again, the court has found that defendants properly exercised their "spousal rule" policy of a shared 12 workweeks of FMLA for a husband and wife upon the birth of their child. Since plaintiff has failed to prove that she (or Lyons) provided adequate notice to the defendants that

they needed to avail themselves of the FMLA provision allowing for leave to care for a seriously ill child, plaintiff cannot meet her burden of a causal connection between her FMLA leave and defendants requiring her to return to work.

Plaintiff also argues there is a causal connection between her taking FMLA leave and being denied the opportunity to rescind her resignation. As in her interference claim argument, plaintiff argues she was terminated for the pretexual reasons of failing to give notice of her resignation, someone else had already been hired to fill her vacancy, and her employment record showed an unacceptable usage of sick time in the past. The court finds plaintiff has not met her burden of establishing a connection between her FMLA leave and the defendants' decision to not re-hire her as a correctional officer. As noted above, the evidence is clear that plaintiff resigned her position as a correctional officer because she accepted a new job with Nicor Gas. Defendants were understandably upset that plaintiff did not give the courtesy of a two-week notice, yet were able to fill her vacancy. Moreover, plaintiff does not dispute that she "went over" her sick leave accrual in 2012 or 2013. Therefore, the court cannot accept plaintiff's argument that these reasons for a denial of her request to return to the Sheriff's Office were "pretexual." The court finds plaintiff has failed to meet her burden to show this causal connection.

Taking all the briefs of both parties into consideration, and construing the facts and inferences in the light most favorable to the plaintiff, for the foregoing reasons, summary judgment must be granted to the defendants on both counts of plaintiff's amended complaint. For the reasons articulated above, plaintiff has failed to raise a genuine issue of material fact on the claims in her amended complaint, let alone show she is entitled to summary judgment. As such, plaintiff's motion for summary judgment must fail.

For the reasons stated above, plaintiff's motion for summary judgment [40] is denied and defendant's motion for summary judgment [37] is granted. The case is terminated.

Date: 05/10/2018          ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)